1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                          NORTHERN DISTRICT OF CALIFORNIA
7
8   JON T. KING,                                    No. C-13-0237 EMC
9              Plaintiff,
                                                    **ORDER GRANTING DEFENDANTS'**
10      v.                                          **MOTION TO DISMISS**
11  MICHAEL D. HAUSFELD, *et al.*,                  **(Docket No. 7)**
12             Defendants.
    _____/
13
14
15                          I.    **INTRODUCTION**
16          Pending before the Court is Defendant's motion to dismiss the complaint for failure to state a
17  claim, or in the alternative to stay this action pending the outcome of arbitration.  Docket No. 7.
18  Plaintiff, a former partner at Defendant Hausfeld LLP, files this wrongful termination suit against
19  the firm and Defendant Michael Hausfeld, alleging that he was fired for objecting to various
20  unethical practices at the firm.  Docket No. 1.  Defendant brings the instant motion arguing that the
21  firm's partnership agreement contained a binding arbitration clause that applies here.  Defendant has
22  filed a demand for arbitration regarding this dispute, and asks that the instant case be dismissed or
23  stayed pending the outcome of this arbitration.  Plaintiff opposes the motion, arguing that the
24  arbitration provision is unconscionable and thus unenforceable.  As this motion to dismiss is based
25  on an argument that the Court should enforce the parties' arbitration agreement, the Court will
26  consider evidence submitted by the parties in addition to the facts as alleged in the complaint.  *See*
27  *Macias v. Excel Bldg. Services LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (on a motion to
28  compel arbitration, a court "may consider the pleadings, documents of uncontested validity, and

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  affidavits submitted by either party") (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d

2  538, 540 (E.D. Pa. 2006)).

3  ## II.   FACTUAL & PROCEDURAL BACKGROUND

4  The following facts are drawn from Plaintiff's complaint and the evidence submitted by the

5  parties on this motion.  Plaintiff began working for Defendant Hausfeld LLP ("Hausfeld LLP" or

6  "the firm") at the firm's founding in November 2008.  Compl. ¶ 33.  Plaintiff had previously worked

7  with Defendant Michael Hausfeld at Hausfeld's previous firm, Cohen Milstein Hausfeld & Toll,

8  PLLC.  Compl. ¶ 30-31.  When Hausfeld was fired by Cohen Milstein and started Hausfeld LLP, he

9  invited Plaintiff to join his new firm as an equity partner.  Compl. ¶ 33.  Plaintiff served as an equity

10  partner from November 2008 to February 2010.  In February 2010, however, Plaintiff opted to

11  become a non-equity partner, which Plaintiff states made him an employee of the firm rather than an

12  owner.  Compl. ¶ 39-40.

13  Plaintiff took a lead role in some of the firm's most important cases, and received positive

14  feedback about his performance from Hausfeld and others.  Compl. ¶¶ 37, 41-54, 57, 69-87.  He also

15  received various honors and invitations to speak at events recognizing his important work in the

16  field of sports law and as a plaintiff's attorney generally.  Compl. ¶¶ 61-68.  At various points in

17  time during his employment with the firm, Plaintiff raised concerns about unprofessional and

18  unethical conduct at the firm, including a failure to take appropriate precautions to avoid conflicts of

19  interest.  *See, e.g.*, Compl. ¶ 163-88, 201-06, 212-14.  After increasing tension around Plaintiff's

20  objections, he was fired on October 3, 2012.  Compl. ¶ 225, 230-44.  Plaintiff alleges that

21  Defendants were motivated to fire him at least in part because of his complaints about conflict of

22  interest issues.  Compl. ¶ 292.

23  As a partner at Hausfeld LLP, Plaintiff signed the firm's partnership agreement.  He initially

24  signed a version of the partnership agreement as an equity partner on May 13, 2009.  Supplemental

25  Declaration of Brent W. Landau ("Landau Decl.") ¶ 4 (Docket No. 27).  The original partnership

26  agreement made no provision for non-equity partners, so when the firm's Management Committee

27  decided to allow partners to convert to non-equity status, Plaintiff requested that the partnership

28  agreement be revised.  Landau Decl. ¶¶ 28-34, Ex. O.  The result was a new partnership agreement

that the equity and non-equity partners signed on April 5, 2010.  Landau Decl. ¶ 34.  Both

partnership agreements contain an identical arbitration clause, which reads, in pertinent part:

> Any dispute or controversy relating to the terms of this Agreement, or arising between or among any of the Partners relating to this Agreement or the Partnership, including the scope and applicability of this Article, and including a request for specific performance under Article XIV hereof, shall be settled by final and binding arbitration conducted within the District of Columbia pursuant to the Commercial Arbitration Rules of the American Arbitration Association, as may be in effect at the time a demand for arbitration is made. . . . Without limiting the scope and extent of Section 15.9, the arbitration proceedings, and each and every aspect thereof, including the decision of the arbitrator, shall be and remain confidential.  If any party seeks to enforce the decision of the arbitrator by judicial proceeding(s), the parties to that dispute shall take all available action necessary to maintain confidentiality, including, but not limited to: (a) seeking an order of the Court permitting filing under seal; (b) refraining from filing any documents or materials until the Court has ruled on a request for such order; and (c) if such order is entered, filing all documents and materials in compliance with such order.  Reasonable attorneys' fees and costs shall be awarded by the arbitrator to the prevailing party.

Def.'s Mot. Ex. A; Landau Decl. Ex. C.  Additional facts are provided below as relevant to the

analysis.

## III.   DISCUSSION

A.   Plaintiff's Evidentiary Objections

Plaintiff raises various objections to evidence offered by Defendants with their reply.

Docket No. 24.  This evidence largely concerns facts that go to the question of whether the

arbitration clause is procedurally or substantively unconscionable. After Plaintiff raised the issue of

unconscionability in his opposition to this motion, Defendants offered the declaration of Brent

Landau, a partner at Hausfeld LLP.  Landau offers testimony on the drafting process for the different

versions of the partnership agreement, Plaintiff's experience with arbitration agreements, Plaintiff's

connections with the Washington, D.C. area, estimates of the time needed for arbitrating this

dispute, and other related matters.  In response to Plaintiff's objections, this Court allowed Plaintiff

to file a supplemental declaration, and ordered all parties to file any documents they wished

considered on this motion.  In response, Defendants filed some of the documents Landau referenced

in his original declaration, and Plaintiff likewise filed various documents he had referenced in earlier

filings.

        1.    <u>Negotiations Regarding the May 13, 2009 Partnership Agreement</u>

First, Plaintiff objects to evidence of the drafting and negotiations process for the original

partnership agreement, dated May 13, 2009.  The Landau Declaration discusses the drafting process

for this initial version of the partnership agreement, indicating that all partners, including Plaintiff,

had multiple opportunities to comment on the partnership agreement over email and on various in-

person and telephone meetings.  Landau Decl. ¶¶ 5-27.  Landau notes that comments from the non-

management committee partners, including Plaintiff, resulted in a number of substantive changes to

the partnership agreement, including changes to the methodology for distributing profits and

procedural requirements for taking certain actions.  Landau Decl. ¶ 23.  At no point in the drafting

process did any of the partners, including Plaintiff, raise concerns about the arbitration clause or

propose changing the clause in any way.  Landau Decl. ¶ 8, 13, 15, 19-20, 23.

        a.    <u>Relevance</u>

Plaintiff objects that evidence of the negotiations process for the May 13, 2009 partnership

agreement is irrelevant because Defendants seek to compel arbitration based not on that agreement,

but based on the April 5, 2010 agreement.  Plaintiff does not dispute, however, that the April 5, 2010

agreement was a revision of the May 13, 2009 agreement, and that the arbitration clause was

unchanged in the revision process.  Landau Decl. ¶¶ 34.  The arbitration clause was originally

incorporated in the partnership agreement in its May 13, 2009 incarnation, and then merely carried

forward verbatim into the April 5, 2010 version of that agreement.  The negotiations and drafting of

the earlier agreement is thus relevant though not necessarily dispositive to whether there was

procedural unconscionability as to the arbitration clause.[1]  Plaintiff's objection to this evidence on

the grounds of relevance is therefore overruled.

---

   [1]  Plaintiff notes in connection with his relevance objection that the April 5, 2010 agreement
was executed after a federal judge had found that Defendant Hausfeld had acted in bad faith in a law
suit connected to his termination from Cohen Milstein.  Docket No. 24 at 2-3.  This observation,
however, has no discernable impact on the relevance of the earlier partnership agreement
negotiations to the question of procedural unconscionability now before the Court.

United States District Court

For the Northern District of California

b. <u>Best Evidence Rule</u>

Plaintiff also objects to the evidence of the drafting process contained in Landau's declaration on the grounds that it is not the best available evidence. Landau's declaration references a number of documents: various drafts of the May 13, 2009 partnership agreement, Landau Decl. ¶¶ 6, 10, 21, 23, emails discussing revisions to the agreement, Landau Decl. ¶¶ 8, 10, 11, 12, 14, 19, and documents listing changes or proposed changes to the agreement, Landau Decl. ¶¶ 14, 16, 17, 19. Plaintiff argues that Landau's testimony as to these documents should be excluded because copies of the documents have not been provided to him or to the Court. Defendants have subsequently submitted a number of the documents referenced in the Landau declaration. Accordingly, this analysis will focus on the documents described by the Landau declaration but not submitted.

Rule 1002 of the Federal Rules of Evidence provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." The rule does not, however, bar testimony about an event simply because a written record of the event was made. *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004). "However, the rule does apply when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself-particularly when the witness was not privy to the events those contents describe." *Id.* (emphasis added); *see also see also* Advisory Committee Notes to F.R.E. 1002 ("an event may be proved by nondocumentary evidence, even though a written record of it was made. If, however, the event is sought to be proved by the written record, the rule applies."). Thus, to the degree that Landau's testimony describes meetings or conference calls in which Landau participated, it is not barred by the best evidence rule simply because written summaries exist of the discussions from such calls. *See, e.g.*, Landau Decl. ¶¶ 1, 7, 13, 15.

Additionally, some of Landau's testimony notes the existence of documents, but does not purport to summarize their contents. *See, e.g.*, Landau Decl. ¶¶ 14, 16 (Landau sent list of comments on draft to non-management committee partners for their review after conference call), 17 (Landau sent list of comments from non-management partners to management committee). As this

United States District Court

For the Northern District of California

testimony is not offered to prove the contents of any documents, it does not fall within the scope of the rule.  *See* 2 McCormick On Evid.§ 234 (6th ed.) ("However, secondary evidence that states a fact about a writing, recording, or photograph is permissible.  It does not raise the danger of mistransmission because it is offered to prove an issue other than the exact terms of the document's content.  Common examples of such issues are that a certain document is in existence or as to its type, history, execution or delivery.  In such cases, Rule 1002 does not apply and testimony may be given without producing the document.").

On the other hand, Landau's testimony summarizing the contents of documents not filed with the court is precluded by this rule.  *See, e.g.*, Landau Decl. ¶¶ 10 (describing revised draft of partnership agreement that was emailed to all partners on April 30, 2009), 23 (describing redline version of final partnership agreement showing changes from April 30, 2009 draft).  Thus, Landau's testimony about the number, type, and magnitude of changes made during the editing process is inadmissible under the best evidence rule.

Landau's testimony, however, describes not just what changes were made, but also what changes were not made.  Specifically, he notes that various documents contained no objections or proposed changes to the arbitration clause.  *See* Landau Decl. ¶¶ 9 (comments and suggested changes from non-management committee partners did not mention arbitration clause), 17 (same), 10 (April 30, 2009 revised draft left arbitration clause unchanged), 23 (no changes to arbitration clause in computer generated comparison of April 30 and May 12, 2009 drafts).

The Ninth Circuit has recognized that "[t]he best evidence rule applies when the contents of a writing are sought to be proved, not when records are searched 'and found not to contain any reference to the designated matter.'"  *United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1035 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 308 (U.S. 2011) (quoting F.R.E. 1002 Advisory Committee Note); *see also United States v. Diaz-Lopez*, 625 F.3d 1198, 1203 (9th Cir. 2010); *see also* Advisory Committee Notes to Fed. R. Evid. 1002 ("Nor does the rule apply to testimony that books or records have been examined and found not to contain any reference to a designated matter."); 2 McCormick On Evid. § 234 (6th ed.) ("Witnesses may also testify that an event did *not* occur because relevant records contain no mention of it.  This negative type of testimony is usually held not to constitute

proof of contents and thus not to require production of records.") (emphasis in original).  Other courts have noted that the best evidence rule does not require exclusion of witnesses who testified to the absence of relevant records in voice mail logs, *Allen v. Wells Fargo Bank Minnesota*, N.A., 334 B.R. 746, 751 (D.D.C. 2005), bank statements, *United States v. Paxton*, 403 F.2d 631, 632 (3d Cir. 1968), telephone directories, *United States v. Madera*, 574 F.2d 1320, 1323 n.3 (5th Cir. 1978), and sales records, *State v. Nano*, 543 P.2d 660, 662 (1975).

While this testimony comes close to the line between summarizing the context of documents and testifying as to the absence of documentation, the Court concludes this testimony is not disputed and is admissible.

Plaintiff's objection is sustained as to Landau's testimony that discusses the contents of documents that have not been submitted to the Court.  Landau Decl. ¶¶ 10, 23.  In all other respects, Plaintiff's objections to the evidence based on the best evidence rule are overruled.

c     <u>Doctrine of Completeness</u>

Plaintiff also objects to Landau's representations about the April 5, 2010 agreement on the basis of the doctrine of completeness, and requests leave to submit an additional portion of the agreement.  Specifically, he makes an offer of proof that the April 5, 2010 agreement contains a clause reading:

> **Entire Agreement:**  This Agreement constitutes the entire and complete understanding and agreement between the Partners, and no other understanding or agreement, whether written or oral, shall have any force or effect.

Pl.'s Obj. at 3.

Since Defendant is offering evidence of the previous negotiations not to vary the terms of the contract, but to argue that there was no procedural unconscionability, however, this clause is not relevant to the disputes in this motion.  Plaintiff's objection on the basis of completeness is thus overruled.

//

//

//

United States District Court

For the Northern District of California

2.      Modifications of Partnership Agreement

Plaintiff objects to Landau's descriptions of the modifications made to the partnership agreement during the 2009 drafting process, and his characterization that some of the modifications were substantial or concerned fundamental aspects of the partnership agreement.  Pl.'s Obj. at 4-5.

Plaintiff objects that Landau's description of the redline version of the document is inadmissible as it violates the best evidence rule.  Landau Decl. ¶ 23.  That objection is sustained for the reasons stated above.  Defendants have submitted a computer generated document comparison summary that Landau states tallies the number of changes between the two documents.  Landau Decl. ¶ 23, Ex. N.  The comparison document contains nothing on its face confirming that the underlying documents compared were actually the original and final drafts of the partnership agreement.  Landau Decl. Ex. N.  While the document does tally that 99 insertions and 77 deletions occurred between "Document 1" and "Document 2," it provides no information about the content, magnitude, or import of these changes.  *Id.*  Since the comparison document provides little to no useful information, this Court does not rely on it in the analysis below.  Plaintiff's objection is thus moot.

3.      Plaintiff's Other Objections

Plaintiff raises a variety of other objections to evidence presented in the Landau declaration, including Landau's statements about:  (1) Plaintiff currently "litigating cases throughout the country"; (2) Plaintiff's travels to Washington, D.C. during his time with Hausfeld LLP; (3) the estimated length of the arbitration proceedings; (4) whether Plaintiff had the option of becoming an associate at the firm if he did not want to be bound by the arbitration agreement; and (5) Plaintiff's knowledge of arbitration relative to other partners at the firm.  These objections generally concern disputes as to facts rather than admissibility.  The Court overrules objections as to admissibility and considers them only as relevant to the analysis below.

4.      Plaintiff's Statement of Recent Decision

On March 6, 2013, the day before the hearing on this matter, Plaintiff filed what was styled a statement of recent decision, but what was in actuality supplemental briefing raising a new argument: that the partnership agreement was unenforceable for lack of consideration.  Docket No.

**United States District Court**

For the Northern District of California

30.  Plaintiff now argues that the partnership agreement lacked consideration because it includes a provision that allows equity partners to amend the agreement by a majority-in-voting-interest of the equity partners.  *Id.* at 5, Ex. A.  Plaintiff did not secure leave of court to file his supplemental brief on this issue.  *See* Local Rule 7-3(d).

The recent decision Plaintiff cites in the supplemental briefing does not actually address this argument, and is inapplicable in any case.  The case, *Noohi v. Toll Bros., Inc.*, found an arbitration clause unenforceable under Maryland law, which requires arbitration clauses to be supported by consideration independent of the consideration in the underlying contract.  12-1261, 2013 WL 680690, at *5-9 (4th Cir. Feb. 26, 2013).  The court found that there was no mutuality of consideration in the arbitration agreement because the arbitration provision bound only the plaintiffs to arbitration; the defendant was free to bring suit in court.  *Id.* at *9-10.  Plaintiff points to no provision of California law analogous to the Maryland law at issue in *Noohi*.  Additionally, he offers no argument that the arbitration clause, as it is contained in the partnership agreement, lacks mutuality in binding each party to arbitration.  *Noohi* is inapposite.

In support of his argument that the partnership agreement lacked consideration, Plaintiff cites a variety of additional cases.  None of these are recently decided however.  Further, Plaintiff offers no explanation for why he failed to raise the lack of consideration argument in his opposition to Defendants' motion.  As Plaintiff raises this argument for the first time in a supplemental filing submitted the day before the hearing and without leave of court, and as he offers no explanation for failing to raise the argument previously, this Court finds that Plaintiff has waived the argument, and declines to consider it.  *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("arguments not raised by a party in its opening brief are deemed waived"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)("The district court need not consider arguments raised for the first time in a reply brief.").

B.    <u>Federal Arbitration Act</u>

The central purpose of the Federal Arbitration Act ("FAA") "is to ensure that private agreements to arbitrate are enforced according to their terms."  *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir.2011).  In order to enforce an arbitration agreement, a court shall issue an affirmative order to proceed in arbitration if the court is satisfied "that the making of the agreement for arbitration or

**United States District Court**
For the Northern District of California

1  the failure to comply therewith is not in issue." 9 U.S.C. § 4 (2006).  When deciding a petition to

2  compel arbitration, the Court's role is "limited to determining (1) whether a valid agreement to

3  arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*

4  *Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Where all of a plaintiff's

5  claims are encompassed by a valid and enforceable arbitration clause, a court may dismiss the

6  complaint under Rule 12(b)(6). *Thinket Ink Info. Res., Inc. v. Sun Microsystems*, Inc., 368 F.3d

7  1053, 1060 (9th Cir. 2004).

8       Arbitration is a matter of contract. *AT & T Techs., Inc. v. Commc'ns Workers of America*,

9  475 U.S. 643, 648 (1986). Thus, "[a]lthough 'courts may not invalidate arbitration agreements under

10  state laws applicable only to arbitration provisions,' general contract defenses such as fraud, duress,

11  or unconscionability, grounded in state contract law, may operate to invalidate arbitration

12  agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir.2002) (quoting *Doctor's*

13  *Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  However, even generally applicable doctrines

14  such as duress or unconscionability cannot be applied in a way that disfavors and undermines

15  arbitration. *AT & T Mobility LLC v. Concepcion*, ⸺ U.S. ⸺, 131 S.Ct. 1740, 1747 (2011).

16  Thus, a state rule that would "interfere with fundamental attributes of arbitration" cannot be applied

17  to invalidate an arbitration agreement, as it would disserve the overarching purpose of the FAA "to

18  ensure the enforcement of arbitration agreements according to their terms so as to facilitate

19  streamlined proceedings." *Id.* at 1748.

20  C.   <u>Unconscionability</u>

21       Plaintiff here argues that the arbitration clause in the partnership agreement is not

22  enforceable because it is unconscionable.  California Civil Code Section 1670.5(a) states that, "[i]f

23  the court as a matter of law finds the contract or any clause of the contract to have been

24  unconscionable at the time it was made the court may refuse to enforce the contract, or it may

25  enforce the remainder of the contract without the unconscionable clause, or it may so limit the

26  application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code §

27  1670.5 (2006).  The doctrine of unconscionability survives *Concepcion*. *Kanbar v. O'Melveny &*

28  *Myers*, 849 F. Supp. 2d 902, 909 (N.D. Cal. 2011).  While there are circumstances (as in

United States District Court

For the Northern District of California

*Concepcion*) where the application of the doctrine may interfere with the fundamental attributes of arbitration, Defendants do not contend the doctrine of unconscionability is preempted here.

Both procedural and substantive unconscionability must be present in order for a court to refuse to enforce a contract based on unconscionability. *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir.2003) ("[A] contract to arbitrate is unenforceable under the doctrine of unconscionability when there is 'both a procedural and substantive element of unconscionability.' "); *Gentry v. Superior Court*, 42 Cal.4th 443, 469 (2007) (noting that "[t]he prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability") (internal quotation marks omitted) *overruled on other grounds as recognized in Sanders v. Swift Transp. Co. of Arizona*, LLC, 843 F. Supp. 2d 1033, 1037 (N.D. Cal. 2012). Although both procedural and substantive unconscionability must be present, they need not be present in the same degree; instead, "[c]ourts apply a sliding scale: the more substantively oppressive the contractual term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir.2007) (citation omitted).

Under California law, Plaintiff bears the burden of proving unconscionability by a preponderance of the evidence. *Engalla v. Permanente Med. Group, Inc*., 15 Cal. 4th 951, 972 (1997) ("The petitioner [bringing a petition to compel arbitration] bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."); *see also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (quoting *Engalla*).

1.    Procedural Unconscionability

Procedural unconscionability focuses on oppression and surprise. "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flores v. Transamerica*

United States District Court

For the Northern District of California

*HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001).  The Ninth Circuit has noted that "[t]he court focuses on whether the contract was one of adhesion.  Was it 'imposed on employees as a condition of employment'? Was there 'an opportunity to negotiate'?"  *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001) (internal citations omitted).

Employment contracts may raise special concerns when it comes to procedural unconscionability.  The California Supreme Court has recognized that:

> in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.

*Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 115 (2000).[2]  Thus, California courts have recognized when an arbitration clause is contained in an employment contract that is a condition of employment is unconscionable where the employee has no opportunity to negotiate the contract.  *See Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 114 (2004) ("An arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable.") (citing *Armendariz*, 24 Cal. 4th 83).

Employment contracts are not procedurally unconscionable in all cases, however.  For example, the Ninth Circuit has recognized that "if an employee has a meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve his or her job, then it is not procedurally unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1073 (9th Cir. 2007), *abrogated on other grounds as recognized in Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947,

---

[2] The California Supreme Court has not revisited this rule since the United States Supreme Court's decision in *Concepcion*, where the Court held that general rules of contract interpretation should not be applied in such a way as to undermine the fundamental attributes of arbitration.  *See Sonic-Calabasas A, Inc. v. Moreno*, 132 S. Ct. 496, 181 L. Ed. 2d 343 (2011) (remanding case following *Armendariz* for reconsideration in light of *Concepcion*; no published decision on remand). At least two decisions in this district, however, have followed *Martinez's* analysis of procedural unconscionability in employment contracts post-*Concepcion*.  *See Antonelli v. Finish Line, Inc.*, 5:11-CV-03874 EJD, 2012 WL 525538 (N.D. Cal. Feb. 16, 2012), appeal dismissed (Aug. 16, 2012); *Laughlin v. VMware, Inc.*, 5:11-CV-00530 EJD, 2012 WL 298230 (N.D. Cal. Feb. 1, 2012). In any case, even if the holdings in *Amendariz* and *Martinez* have been overruled by *Concepcion*, this Court's analysis would remain unchanged.

United States District Court

For the Northern District of California

960 (9th Cir. 2012).  In *Davis*, the court found the arbitration clause was unconscionable because employees were given three months of notice of the new dispute resolution process, but were not permitted to opt out.  *Id.* at 1073.  On the other hand, the Ninth Circuit has held that employment contracts involving arbitration clauses were not unconscionable where the employee was provided the opportunity to opt out of the employer's dispute resolution program.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).

a.    The Negotiation Process

Plaintiff argues that procedural unconscionability is present here for a number of reasons.  Plaintiff offers his own declaration, stating that because the partnership agreement was "was jointly executed by fourteen attorneys, it could not be individually negotiated."  King Decl. ¶ 2, 8, 10.  He further notes that there was no "opt-out provision" allowing individual signatories to avoid the arbitration clause.  *Id.*  Plaintiff also argues as a non-equity partner, he had less bargaining power, which supports a finding of procedural unconscionability.  He points in particular to the fact that the partnership agreement specifies that non-equity partners do not have a vote on matters regarding the partnership except as required under the laws of the District of Columbia.  King Decl. ¶ 7.  Plaintiff further states that the partnership agreement was drafted by the law firm of Venable LLP, who represents Defendants in the instant matter, and that Venable advised all firm partners on the partnership agreement and was paid with partnership funds.[3]  King Decl. ¶ 11.[4]

Plaintiff's argument that the arbitration clause in the partnership agreement was procedurally unconscionable is undermined, however, by evidence the Defendants offer that Plaintiff took part in the drafting and negotiation process for the partnership agreement.  When the original partnership

---

[3]  Plaintiff also objects to the fact that Venable is now representing Defendants in the instant suit.  While this may go to whether it is improper for Venable to appear as counsel in this case, it is not relevant to the question of whether the arbitration clause was unconscionable at the time the partnership agreement was entered.

[4]  Plaintiff also points out that the partnership agreement contains no clause "indicating that all parties are considered to be the drafter," or "prohibiting ambiguities from being construed against the drafter."  Pl.'s Opp. at 12.  The relevance of this point is unclear, however, given that the application of the arbitration clause to this case does not raise any ambiguities.  Indeed, Plaintiff does not argue that the arbitration clause is ambiguous, or that its application to this situation is in any way unclear.

1   agreement was drafted, Plaintiff was an equity partner at the firm, though not a member of the

2   management committee. Landau Decl. ¶ 2-8. The firm's management committee circulated a draft

3   version of the agreement to all partners on or about April 15, 2009. Landau Decl. ¶ 6. On that day,

4   the firm held a partner meeting in Washington, D.C. where the partners discussed the draft

5   agreement. Landau Decl. ¶ 7. Plaintiff was present at this meeting. *Id.* At that meeting no partner,

6   including Plaintiff, raised any questions or concerns about the arbitration clause in the agreement.

7   *Id.* Nothing suggests that the scope and terms of the arbitration clause were not subject to discussion

8   and revision had anyone objected.

9         Moreover, the non-management committee partners held subsequent phone calls to discuss

10   the agreement on April 22, May 4, May 5, May 7 and May 8, 2009. Landau Decl. ¶¶ 8, 13, 15, 19-

11   20. Plaintiff participated in the May 4, May 5, and May 7 calls, and was aware of the others.

12   Landau Decl. ¶¶ 8, 13, 15, 18-20. As a result of the conversations in these calls, partner Brent

13   Landau relayed to the management committee various comments, questions, and suggested changes

14   in late April, and again on May 6. Landau Decl. ¶¶ 9, 17, Ex. E. The May 6 email from Landau

15   transmitting the comments and questions indicates that Plaintiff was among the partners who

16   contributed feedback. Landau Ex. E. After receiving the first round of comments, the management

17   committee circulated a revised draft of the agreement on April 30. Landau Decl. ¶ 11.

18         After the second round of feedback, Richard Lewis, who was on the management committee,

19   replied with a May 7, 2009 email reading:

20         The attached readlines are my notes on the issues you raised and or
           responses. Frank will be making edits and hopefully getting us a final
21         draft tomorrow. For some issues, we have not accepted your language
           but expect than an explanation of the issue to you by Jane will satisfy
22         your concerns. Please follow up with her where indicated. Once you
           review this and/or Frank's draft tomorrow, let me know if we have
23         resolved the issues raised.

24   Landau Decl. Ex. K. Following the May 8 conference call with the non-management committee

25   partners, Landau contacted Lewis and "on behalf of the non-Management Committee partners, [he]

26   told Lewis that the resolution of issues proposed in his email was acceptable." Landau Decl. ¶ 20.

27   Lewis then circulated a revised version of the agreement and a redline copy showing changes on

28   May 8. Landau Decl. ¶ 21, Ex. L. Plaintiff responded asking Lewis whether he should just email an

1  electronic version of his signature.  *Id.*  The final version of the agreement was circulated on May

2  12, 2009, and the partners signed the agreement on May 13, 2009.  Landau Decl. ¶ 22, Ex. A, M.

3       Throughout the drafting process, no partner, including Plaintiff, raised concerns or questions

4  about the arbitration clause.  Landau Decl.  ¶¶ 5, 7, 9, 10, 13, 15, 17, 23.  Furthermore, no changes

5  were made to the arbitration clause throughout the drafting process.  Landau Decl. ¶ 10, 23.  While

6  Plaintiff offers a conclusory allegation that "[t]he Confidential Arbitration Clause was not negotiable

7  by me," he does not dispute the facts Defendants offer about the drafting and negotiation of the

8  partnership agreement.  Declaration of Jon T. King ("King Decl.") ¶ 8 (Docket No. 19-1); *see*

9  *generally* Supplemental Declaration of Jon T. King ("Supp. King Dec.") (Docket No. 28).  He does

10  not dispute that he contributed feedback during the drafting of the partnership agreement, nor does

11  he contend that he at any point raised concerns about the arbitration provision of the agreement.[5]

12       Plaintiff argues that the negotiations leading to the partnership agreement containing the

13  arbitration clause is irrelevant because the arbitration clause sought to be enforced here is in the later

14  April 5, 2010 partnership agreement when Plaintiff had become a non-equity partner with little

15  power and leverage.  But it is noteworthy that the partnership agreement was revised *at Plaintiff's*

16  *request* when Plaintiff became a non-equity partner.  Landau Decl. ¶ 29.  When Plaintiff informed

17  the rest of the firm that he wished to become a non-equity partner, he noted that the current

18  partnership agreement contained no provision providing for such a status, and that under the existing

19  agreement his only option was to withdraw as a partner.  Landau Decl. Ex. O.  The partnership

20  agreement was subsequently amended to provide for the possibility of non-equity partners.  Landau

21  Decl. ¶¶ 29-34.  Plaintiff was part of at least two meetings about these revisions, received drafts for

22  _____

23       [5]  Plaintiff does state that he "understood issues of control and confidentiality to be extremely
24  important to Defendant Michael D. Hausfeld, in particular, because of his unpleasant experience in
    being fired by his prior law firm" and "the ensuing public federal court litigation."  Pl.'s Opp. at 11.
25  Plaintiff states that he recalls being on a call wherein Defendant Hausfeld stated that "never again"
    would he allow himself to be voted out of a partnership.  King Decl. ¶ 9.  Plaintiff does not indicate,
26  however, that Hausfeld or others ever made comments about the desirability of arbitration clauses,
    nor does he contend that he did not raise concerns about the arbitration provision because he knew
27  that his objections would be fruitless.  Additionally, the fact that the firm did not require arbitration
    agreements of its associates undermines Plaintiff's suggestion that any attempt to negotiate an
28  agreement without an arbitration clause – or with a modified arbitration clause – would have been
    fruitless.  *See* Landau Decl. ¶ 24.

United States District Court

For the Northern District of California

1  comment, and voted to approve the revised agreement. Landau Decl. ¶¶ 30-34. Moreover, in the

2  April 5, 2010 version of the partnership agreement, no changes were made to the arbitration

3  provision. Landau Decl. ¶ 32, Ex. O. The arbitration clause was maintained verbatim.

4        Thus, the context of the negotiations that led to the first partnership agreement which

5  originated the arbitration clause is relevant. Plaintiff has made no showing that in the drafting of the

6  revised partnership agreement, he was shut out from the negotiation process.[6] Plaintiff has not

7  alleged he sought to revise or eliminate the arbitration clause or was prevented from doing so

8  because he believed any such effort would be futile. Thus, there is no evidence of procedural

9  unconscionability with respect to the arbitration clause in the April 5, 2010 partnership agreement.

10                    b.    Application of Legal Principle

11        Plaintiff's participation in the drafting process that gave rise to the language of the arbitration

12  clause at issue establishes that this is not a situation where there was "no real negotiation and an

13  absence of meaningful choice." *Flores*, 93 Cal. App. 4th at. 853. Although Plaintiff points to one

14  case suggesting that there may be procedural unconscionability even where an employee was able to

15  negotiate some of the terms of his employment, that case is inapposite. In *Abramson v. Juniper*

16  *Networks, Inc.*, the court noted that

> Defendants argue that plaintiff's "claim of inferior bargaining power is
> belied" by his allegations that "he won substantial and unusual
> concessions during his pre-employment negotiations with Juniper."
> We reject that argument. Plaintiff's ability to negotiate other aspects
> of his employment with Juniper has no bearing on the question of
> whether we had power to negotiate the arbitration provision. (*Graham
> v. Scissor–Tail, Inc*., *supra*, 28 Cal.3d at p. 819, 171 Cal.Rptr. 604,
> 623 P.2d 165; *Stirlen v. Supercuts, Inc*., supra, 51 Cal.App.4th at p.
> 1533, 60 Cal.Rptr.2d 138.) Defendants also cite plaintiff's status as a
> person of "substantial renown" in his profession as proof of his equal
> bargaining power. Again, however, plaintiff's business stature and
> skills do not demonstrate his power to bargain with respect to
> arbitration. (*Cf. Graham v. Scissor–Tail, Inc*., *supra*, 28 Cal.3d at p.
> 812, 171 Cal.Rptr. 604, 623 P.2d 165 [contract adhesive, even though
> plaintiff was "an experienced promoter and producer of musical

---

[6] Plaintiff also argues that the circumstances surrounding his termination indicate that
Defendants viewed him as having "a far inferior status" because "it is difficult if not impossible to
imagine a true 'partner' being treated in such a fashion." Pl.'s Opp. at 12. Even taking as true
Plaintiff's rosy assertion that "true" partners never have acrimonious falling outs, the details of how
Plaintiff was fired is not relevant to the question of unconscionability, which is determined as of the
time of contract formation. *See* Cal. Civ. Code § 1670.5(a).

concerts"]; *Stirlen v. Supercuts, Inc.*, *supra*, 51 Cal.App.4th at p. 1533, 60 Cal.Rptr.2d 138 [contract adhesive, even though plaintiff was "a successful and sophisticated corporate executive"].) "The suggestion that a contract or clause cannot be unconscionable if it is accepted by a knowledgeable party has been repudiated by our Supreme Court." (*Stirlen v. Supercuts, Inc.*, *supra*, 51 Cal.App.4th at p. 1534, 60 Cal.Rptr.2d 138, *citing Graham v. Scissor–Tail, Inc.*, *supra*, 28 Cal.3d at p. 820, 171 Cal.Rptr. 604, 623 P.2d 165.)

115 Cal. App. 4th 638, 662-63 (2004).  In *Abramson*, however, the arbitration clause was contained in an offer letter and employment agreement the plaintiff had signed.  *Id.* at 644.  The court found that the arbitration agreement "was presented on a take it or leave it basis."  *Id.* at 663.  Though it is not entirely clear from the court's decision, it does not appear that the plaintiff negotiated with respect to any of the provisions of the offer letter and employment agreement, but rather with respect to other terms of employment.  *Id.* at 644.

Similarly, the cases cited in *Abramson* are distinguishable from the case at bar.  In *Stirlen v. Supercuts, Inc.*, the arbitration clause was found in standard employment contract.  51 Cal. App. 4th 1519, 1534 (1997).  Though the plaintiff had been able to negotiate some of the terms of his compensation and benefits, the court found that he "had no realistic ability to modify the terms of the [standard] employment contract."  *Id.*  In *Graham v. Scissor-Tail, Inc.*, the plaintiff, music producer Bill Graham, signed contracts with a band that consisted of identical industry form agreements that varied only as to the time and place of the concert, wages, and similar details.  28 Cal. 3d 807, 812 (1981).  The court noted that though Graham was able to negotiate the particulars as related to the specific concerts, the arbitration clause was present in form contracts whose use was required by a union to which "all concert artists and groups of any significance or prominence" belonged.  *Id.* at 818.

In contrast, Plaintiff in this case actively participated in drafting the partnership agreement that contained the arbitration clause carried over into the revised agreement.  He has provided nothing other than a conclusory assertion indicating that he was somehow prevented from negotiating the terms of the arbitration clause as part of this process.

//

//

United States District Court
For the Northern District of California

c.      Additional Factors

Further, Plaintiff was not an unsophisticated party in this negotiation process.  *See Stirlen*, 51 Cal. App. 4th at 1535 ("experienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms").  He is an seasoned attorney with significant arbitration experience.  A biography Plaintiff prepared for himself in 2009 notes that he had "served as co-lead arbitration counsel in a two week arbitration regarding the distribution of financial products."  Landau Decl. ¶ 3, Ex. B.  Plaintiff has "also worked on an international arbitration matter for ARCO oil company relating to a contractual dispute."  Landau Decl. Ex. B.  He thus had substantial knowledge and experience to understand the meaning and import of the arbitration clause in the partnership agreement.

Plaintiff also argues that there was procedural unconscionability because there was some degree of surprise.  Specifically, he objects that "[n]either Defendants, nor Venable, ever explained that the law firm would take anything remotely like their present position, that allegations such as mine must be secretly arbitrated."  King Decl. ¶ 11.  This, however, is not enough to show surprise.  Given that Plaintiff was involved in the drafting of the partnership agreement containing the clause, and given that he is a sophisticated attorney familiar with arbitration agreements, he would not have needed Defendants or Venable to explain to him the clear meaning of the arbitration clause: that all disputes related to the partnership agreement were subject to confidential arbitration.

Plaintiff has therefore failed to demonstrate that the arbitration clause in the partnership agreement was procedurally unconscionable.  Since California law requires both procedural and substantive unconscionability, this is sufficient to reject Plaintiff's argument and find the arbitration clause enforceable.  *See  Circuit City Stores*, 335 F.3d at 1105.

2.      Substantive Unconscionability

Even were Plaintiff successful in establishing some degree of procedural unconscionability, his claim of unconscionability would fail because he is unable to establish substantive unconscionability.  Since any procedural unconscionability would be slight, Plaintiff would need to establish more than minimal substantive unconscionability in order to find the contract unenforceable.  *See Davis*, 485 F.3d at 1072 ("the more substantively oppressive the contractual

United States District Court

For the Northern District of California

1  term, the less evidence of procedural unconscionability is required to come to the conclusion that the

2  term is unenforceable, and vice versa"). This he is unable to do.

3        Substantive unconscionability focuses on "the effects of the contractual terms and whether

4  they are overly harsh or one-sided." *Flores*, 93 Cal.App.4th at 853. California courts have also

5  found substantive unconscionability where an arbitration clause limits the types of remedies that

6  would be available under the statute, thus violating the "principle that an arbitration agreement may

7  not limit statutorily imposed remedies such as punitive damages and attorney fees." *Armendariz v.*

8  *Found. Psychcare Servs., Inc.*, 24 Cal.4th 83, 103 (2000); *see also Graham Oil Co. v. ARCO Prods.*

9  *Co.*, 43 F.3d 1244, 1248 (9th Cir.1994) (rejecting arbitration clause that deprived the plaintiff of its

10  statutory right to punitive damages and attorney's fees, and limited the statute of limitations).

11  Plaintiff offers three arguments for why the arbitration clause in the partnership agreement is

12  substantively unconscionable: the choice of Washington, D.C. as a venue, the confidentiality clause,

13  and the requirement that the losing party pay the fees for the arbitration.

14             a.    Venue Selection Clause

15        Plaintiff argues that the arbitration clause is unconscionable because it requires the

16  arbitration to take place in Washington, D.C., while he lives in Northern California. King Decl. ¶

17  19. It appears that this location was chosen because Defendant Hausfeld LLP is headquartered in

18  Washington, D.C., and most of its attorneys work there. Landau Decl. ¶ 44. Defendants also note

19  that Plaintiff traveled to Washington, D.C. on numerous occasions while employed by Hausfeld

20  LLP, including one trip wherein he participated in a meeting concerning the drafting of the

21  partnership agreement. Landau Decl. ¶¶ 7, 44. Plaintiff notes that all of these trips were at the

22  firm's expense, and that he cannot recall any of them lasting more than one or two days. Supp. King

23  Decl. ¶ 10.

24  //

25  //

26  //

27  //

28  //

United States District Court

For the Northern District of California

Plaintiff states that the cost of staying in Washington, D.C. for "an indefinite period"[7] would be "extremely onerous, if not impossible" given that he has had no source of income since Defendants fired him in October 2012. *Id.* With his supplemental declaration, Plaintiff submitted financial statements prepared by his wife reflecting family income, expenses, and debts. Supp. King Decl. Ex. B. While these statements do show that Plaintiff has had no income since October 2012, they also indicate that because of his wife's earnings, the family's monthly income has ranged from a low of $3,750.44 to a high of $10,054.97 since that time, with an average of $6,521.57 per month. While this is certainly a decrease from the roughly $15,000 per month the family had previously earned from Plaintiff's salary, their income is still not insignificant. Plaintiff also states that being away from home for the arbitration would be "an untenable situation given my family circumstances." King Decl. ¶ 19. He does not further explain this statement, although he does mention elsewhere that he has two children under the age of five. King Decl. ¶ 4. In any case, since the unconscionability analysis looks to the time the contract was made, and not the time of enforcement, Plaintiff's arguments here are of questionable relevance to the issue of substantive unconscionability.

Defendants argue that venue in Washington is reasonable in light of the fact that Plaintiff has recently traveled to Minneapolis in connection with his new law practice, and that he also proposed a meeting (which ultimately did not occur) with Defendant Hausfeld in Washington on another case. Landau Decl. ¶ 43. Plaintiff does not dispute that he traveled to Minneapolis for a court appearance, but he argues that when he proposed the meeting with Defendant Hausfeld in Washington, he "believed it extremely unlikely that Mr. Hausfeld would agree to meet." Supp. King Decl. ¶ 8.[8]

---

[7] The parties dispute how much time would be required for the arbitration. Defendants contend that the arbitration would require only a few days, while Plaintiff objects that it would likely take several weeks. Def.'s Reply at 2; Pl.'s Obj. at 6. They likewise seem to dispute how much of the pre- and post-hearing proceedings would require Plaintiff's physical presence in Washington. Def.'s Reply at 2; Pl.'s Obj. at 6.

[8] Defendants also argue that Plaintiff would need to travel to Washington D.C. to conduct discovery even absent arbitration because he has indicated an intention to depose attorneys who work for Defendants' counsel Venable. Def.'s Reply at 9. The email Defendants reference does contain a statement from Plaintiff indicating that he intends to depose Venable attorneys because he believes that they have a conflict of interest, but he does not identify who or discuss locations. Docket No. 12 Ex. D. Venable has locations in various cities, including Washington, D.C. and Los

Plaintiff points to only one case for his argument that the requirement to arbitrate in Washington, D.C. is unconscionable – this Court's decision in *Newton v. Am. Debt Services, Inc.*, 854 F. Supp. 2d 712 (N.D. Cal. 2012).  In *Newton*, this Court found unconscionable a contract between a consumer and the company with whom she had contracted to settle her debts; in that contract " the arbitration clause requires that consumers arbitrate their claims in Tulsa, Oklahoma, thus giving Defendants GCS and RMBT at unfair advantage at the consumer's expense by requiring that the consumer come to GCS's home city to arbitrate her claims." *Id.* at 726.  In that case, the plaintiff's total claim was for less than $2000, and she apparently had no ties to Tulsa.  *Id.*  Here, in contrast, Plaintiff is a former partner at a law firm headquartered in Washington, D.C., and he visited the city on a number of times in connection with his work for Defendant Hausfeld LLP.  It cannot be said that the amount that might be at controversy is overshadowed by the cost and inconvenience of attending arbitration in the selected venue.

Defendant cites to a number of cases enforcing employment contracts requiring out of state arbitration.  *See Spradlin v. Lear Siegler Mgmt. Services Co., Inc.*, 926 F.2d 865, 868 (9th Cir. 1991) (upholding district court's enforcement of forum selection clause for Saudi Arabia where the plaintiff had "presented no evidence of unreasonableness or fraud except for the conclusory statement that the employment contract, including the forum selection clause, was a product of fraud. . . . [and] has failed to present any evidence in opposition to the motion to indicate that the parties were of unequal bargaining power or that litigating in Saudi Arabia will be so inconvenient as to deprive him of a meaningful day in court."); *Flake v. Medline Indus., Inc.*, 882 F. Supp. 947, 950 (E.D. Cal. 1995) (enforcing forum selection clause requiring that California resident bring suit against former employer in Illinois where plaintiff would have adequate remedy in Illinois courts); *Olinick v. BMG Entm't*, 138 Cal. App. 4th 1286, 1305 (2006) (enforcing forum selection clause requiring venue in New York).  While none of these cases explicitly address the question of unconscionability, the *Olinick* court stated:

> We do not read *Armendariz* as precluding the formation of an employment contract containing valid forum selection and

_____

Angeles.  *See* www.venable.com/about/offices.

> choice-of-law provisions.  An employer and an employee may validly
> agree to select a forum other than California, and may validly select
> the substantive law of another jurisdiction, provided the employee has
> an adequate remedy for his or her discrimination claim in the selected
> forum.

*Olinick*, 138 Cal. App. 4th at 1305.

The forum selection clause in the arbitration agreement is of the sort often found in arbitration agreements and other contracts.  Given the location of the firm's headquarters, there is a rational basis for selecting a Washington, D.C. forum, and Plaintiff has failed to establish that the operation of this clause is so "overly harsh or one-sided" as to be unconscionable.  *Flores*, 93 Cal.App.4th at 853.

### b.   Confidentiality Clause

Plaintiff also argues that the arbitration clause is unconscionable because it requires that "the arbitration proceedings, and each and every aspect thereof, including the decision of the arbitrator, shall be and remain confidential."  Def.'s Mot. Ex. A.  Although his argument on this front is not entirely clear, Plaintiff seems to argue that the confidentiality clause hampers his ability to represent his clients, and thus violates the California Rules of Professional Conduct and the State Bar Act. Pl.'s Opp. at 14-17 (objecting that confidentiality clause hampers Plaintiff's ability to represent his clients but not discussing unconscionability), 19-21 (citing cases finding confidential arbitration clauses unconscionable but providing no application to the instant facts).

Plaintiff's argument about how the confidentiality clause would inhibit him from zealously representing his clients is not entirely clear.  He states:

> I am currently representing a client that Defendants formerly
> represented in a matter presently under gag-order.  I previously also
> represented another client simultaneously with Defendants in another
> matter.  In both instances, discussion of the present litigation is
> essential.  I anticipate appearing in various capacities in numerous
> matters in which Defendants are counsel in the future.

King Decl. ¶ 18.  Plaintiff argues that the confidentiality clause will prevent him from discussing "*anything* about the present state of affairs between Plaintiff and Defendants with his clients, class members, co-counsel, witnesses, potential witnesses, or even courts."  Pl.'s Opp. at 14-15 (emphasis in original).

United States District Court

For the Northern District of California

Plaintiff's argument about the unconscionability of the confidentiality clause, however, is unconvincing in large part because it relies on an unreasonably expansive reading of the clause is not justified by the language of the agreement.  Plaintiff reads the confidentiality clause to mean that he

> would not even be able to *even mention* the proceedings to family, friends, or colleagues, let alone discuss any aspect of the proceedings. Moreover, Plaintiff could not comply with any subpoena, court order, formal or informal request of anyone or any entity, including any tribunal, disciplinary, regulatory, or law enforcement entity. Furthermore, Plaintiff could not comply with any request of the co-lead counsel firms that are charged by Court order for overseeing on behalf of plaintiff class members the prosecution of the very litigations affected by Defendants' misconduct.  The law cannot countenance such a result.  Additionally, any of the above mentioned individuals or entities in the preceding paragraph, were they even to make an inquiry of Plaintiff to provide *any* information regarding arbitration proceedings, could be subject to risk of claims of interference with contract, among other potential causes of actions.

Pl.'s Opp. at 15.  While each and every aspect of the arbitration (including the arbitrator's decision) must be kept confidential, the language of the clause does not on its face prohibit mentioning of the fact of arbitration, nor does it expressly ban the description of the alleged facts and claims (already a matter of public record herein).

Plaintiff does cite to cases finding that confidentiality clauses having such a sweeping effect are unconscionable.  For example, in *Davis*, the court found unconscionable a confidential arbitration clause that prohibited even mention of "the existence of a controversy and the fact that there is a mediation or an arbitration proceeding."  485 F.3d at 1078.  In that case, the court found that

> Here, the DRP's confidentiality clause as written unconscionably favors O'Melveny.  The clause precludes even mention to anyone "not directly involved in the mediation or arbitration" of "the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration" or even "the existence of a controversy and the fact that there is a mediation or an arbitration proceeding."  Such restrictions would prevent an employee from contacting other employees to assist in litigating (or arbitrating) an employee's case.  An inability to mention even the existence of a claim to current or former O'Melveny employees would handicap if not stifle an employee's ability to investigate and engage in discovery.  The restrictions would also place O'Melveny "in a far superior legal posture" by preventing plaintiffs from accessing precedent while allowing O'Melveny to learn how to negotiate and litigate its contracts in the future.  *Id.*  Strict

23

> confidentiality of all "pleadings, papers, orders, hearings, trials, or awards in the arbitration" could also prevent others from building cases. *See id.* ("the unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct or unlawful discrimination"). It might even chill enforcement of Cal. Labor Code § 232.5, which forbids employers from keeping employees from disclosing certain "working conditions" and from retaliating against employees who do so.

*Id.* at 1078-79. In *Kanbar v. O'Melveny & Myers*, this Court found an identical confidentiality clause unconscionable "for the reasons discussed by the Ninth Circuit in *Davis*." 849 F. Supp. 2d 902, 909-10 (N.D. Cal. 2011).

This case is distinguishable from *Davis* and *Kanbar* in that the language of the confidentiality clause is much less broad. As noted above, the confidentiality clause in this case, while it does provide that "every aspect" of the arbitration proceedings is confidential, it does not go so far as to prohibit mere mention of the proceedings, which the clause in *Davis* and *Kanbar* did explicitly. *See* Def.'s Mot. Ex. A.

Additionally, Plaintiff's argument that the confidentiality clause would hinder him in the representation of his clients is based on an unjustifiedly broad reading of the arbitration clause. Since Plaintiff's complaint in this case is based on allegations that he was fired for reporting unprofessional and unethical conduct at Defendant Hausfeld LLP, it is possible that in representing former clients of the firm he would need to discuss such misconduct to the degree that it had affected his client's interests. This is distinct, however, from discussing Plaintiff's current dispute with his former employer. While the confidentiality clause bars discussion of all aspects of the arbitration proceedings, it is not so broadly written as to prohibit mention of all facts that Plaintiff may use to support his case in the arbitration. While it is possible that in representing his clients Plaintiff may be called upon to discuss allegations of professional misconduct on the part of Defendant Hausfeld LLP, this Court can see no reason that Plaintiff would need to discuss his wrongful termination suit in order to adequately represent his clients; he can still discuss his knowledge of underlying facts which exists independent of any arbitration.

//

//

1    Indeed, at the hearing, Defendants confirmed that the confidentiality clause here does not

2    prevent Plaintiff from discussing the underlying facts which he uses to prove his claim in arbitration,

3    nor does it prevent him from conducting discovery in the arbitration proceedings.

4    Accordingly, the Court finds that the confidentiality clause is not substantively

5    unconscionable.

6                            c.    Fee Shifting Clause

7    Plaintiff argues that the arbitration clause is unconscionable because it requires the losing

8    party to pay reasonable attorney's fees and costs.  Def.'s Mot. Ex. A.  In support of this proposition,

9    Plaintiff cites to this Court's opinion in *Newton v. American Debt Services, Inc.*, 854 F. Supp. 2d

10   712 (N.D. Cal. 2012).  In *Newton*, this Court concluded that a fee shifting clause in an arbitration

11   agreement between a customer and a debt servicing company was unenforceable because it violated

12   California's Consumer Legal Remedies Act (CLRA).  *Id.* at 725.  That Act provides that prevailing

13   plaintiffs be awarded attorney's fees, but that prevailing defendants should be awarded fees only in

14   cases where the plaintiff brought suit in bad faith.  *Id.*  Since the fee shifting clause at issue in

15   *Newton* provided that the prevailing party should pay reasonable fees and costs regardless of

16   whether the action was brought in bad faith, it contravened the balance struck by the CLRA.  This

17   Court thus found that "the Agreements may deter customers with legitimate disputes from bringing

18   suit in contravention of their statutory rights."  *Id.*  As there is no applicable statute analogous to the

19   CLRA which would be contravened by the arbitration clause's fee provision, Plaintiff's reliance on

20   *Newton* is misplaced.

21   Indeed, other courts have found that fee shifting provisions are not necessarily

22   unconscionable.  In *DeGraff v. Perkins Coie LLP*, an attorney brought suit against his former law

23   firm, and the firm sought to enforce an arbitration provision in the partnership agreement. C

24   12-02256 JSW, 2012 WL 3074982, at *1 (N.D. Cal. July 30, 2012).  The court rejected the

25   plaintiff's argument that the fee shifting provision was substantively unconscionable because "these

26   terms in the arbitration provision apply equally" to the plaintiff and his former firm.  *Id.* at *5.

27   Similarly, in *Captain Bounce, Inc. v. Bus. Fin. Services, Inc.*, the court found that a fee shifting

28   provision was not unconscionable because "it is mutual, applying equally to both parties, and is not

United States District Court
For the Northern District of California

1  necessarily one-sided or unfair where, as here, the Court found minimal evidence of procedural

2  unconscionability."  11-CV-858 JLS WMC, 2012 WL 928412, at *11. (S.D. Cal. Mar. 19, 2012).

3  The court also noted that "[i]n determining whether the arbitration cost is unconscionably high, the

4  Court is required to consider Plaintiffs' ability to pay the arbitration costs at the time the agreement

5  was entered into." *Id.* (citing *Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009)).

6        In this case, the fee shifting provision is mutual, as it applies equally to both parties.  At the

7  time the parties entered the arbitration agreement, Plaintiff was a partner at a law firm, and

8  presumably had significant income and resources.  Though Plaintiff argues that under his current

9  financial circumstances, he may not be able to pursue this case to arbitration given the risk of paying

10  Defendants' fees if he lost, he points to nothing indicating that *current* inability to pay renders a fee

11  shifting provision unconscionable.  Unconscionability is assessed based on circumstances at the time

12  the contract was entered.  Moreover, the point of a fee shifting clause is that if Plaintiff's claim

13  proves meritorious, *his* fees would be reimbursed by Defendant.  The clause could thus facilitate his

14  ability to vindicate his rights.  Finally, the Court notes that fee shifting clauses in contracts are

15  commonplace.  *See* Cal. Civ. Code § 1717 (enforceability of fee shifting if provided in contract).

16        As the fee shifting provision is mutual and not unduly burdensome, it is not substantively

17  unconscionable.  Since Plaintiff has failed to establish either procedural or substantive

18  unconscionability, the arbitration clause is enforceable.[9]  Plaintiff's sole cause of action is within the

19  scope of the arbitration clause, dismissal is appropriate.  *See Thinket Ink Info. Res., Inc. v. Sun*

20  *Microsystems*, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004).

21  D.      Illegality of Contract

22        Plaintiff also argues that the arbitration clause is unenforceable because it is illegal.  Pl.'s

23  Opp. at 25-26 (citing Cal. Civ. Code § 1550 ("It is essential to the existence of a contract that there

24  should be . . . [a] lawful object")).  In support of this argument, he offers cites only to a New York

25  _____

26  [9] Plaintiff also argues that the fact that the severance agreement Defendants tried
    (unsuccessfully) to have him sign contained arbitration and confidentiality agreements "evidences
27  Defendants' concern that their Confidential Arbitration Clause" in the partnership agreement was
    unenforceable. Pl.'s Opp. at 12-14.  Even if this agreement did indicate that Defendants were
28  concerned about the enforceability of the partnership agreement, this does not indicate that the
    partnership agreement actually was unenforceable under the relevant legal standards.

United States District Court
For the Northern District of California

case finding an arbitration clause in an attorney-client contract unenforceable. *Larrison v. Scarola Reavis & Parent LLP*, 812 N.Y.S.2d 243 (Sup. Ct. 2005) (holding that "a retainer agreement that contains a clause to arbitrate in front of the American Arbitration Association, which waives the client's right to access to the courts to resolve disputes arising out of the attorney/client relationship must be viewed as inherently unenforceable and against public policy."). Plaintiff points to no case indicating that a confidential arbitration clause in a partnership agreement is unenforceable or illegal.

Though Plaintiff argues elsewhere that the confidential nature of the arbitration will prejudice his current or future clients, or harm Defendants' clients, his argument is unconvincing for the reasons discussed above. Even if the confidentiality of the arbitration would harm his or Defendants' clients, however, this alone would not be sufficient to show that the partnership agreement or the confidential arbitration clause had no lawful object, consistent with Cal. Civ. Code § 1550.

This Court thus rejects Plaintiff's argument that the arbitration clause is unenforceable due to illegality.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED** and the complaint is **DISMISSED** with prejudice. The Clerk shall enter judgment and close the file.

This order disposes of Docket No. 7.

IT IS SO ORDERED.

Dated: April 9, 2013

_____
EDWARD M. CHEN
United States District Judge